**UNITED STATES DISTRICT COURT**
**District of New Jersey**

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

<u>LETTER-OPINION</u>

October 12, 2007

Gregory A. Lomax, Esq.
Wolf, Block, Schorr & Solis-Cohen, LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003

John P. Lacey, Esq.
Connell Foley, LLP
85 Livingston Avenue
Roseland, NJ 07068

> **Re:    Ultimate Trading Corp. v. Heidi Daus, et al.**
>         **Civil Action No.: 07-4203 (JLL)**

Dear Counsel:

This matter comes before the Court on Plaintiff's application for a preliminary injunction, with interim restraints, pursuant to Federal Rule of Civil Procedure 65.  The Court has considered the papers submitted in support of Plaintiff's application.[1]  For the reasons set forth below, Plaintiff's application is hereby denied in its entirety.

**Background**

Plaintiff, Ultimate Trading Corporation (hereinafter referred to as "UTC" or "Plaintiff"), has engaged in the "business of manufacturing jewelry and similar products for resale by television-based and other retailers," and providing other related services, for approximately twenty years. (Pl. Br. at 2).  Defendant, Heidi Daus (hereinafter referred to as "Daus" or "Defendant"), has engaged in the business of designing and manufacturing jewelry for approximately twenty years. (Id. at 3).  Plaintiff claims that in 2003, the parties entered into an oral agreement whereby Defendant agreed to provide Plaintiff with jewelry designs to present to the Home Shopping Network (hereinafter referred to as "HSN") and to make on-air appearances

---

[1] No oral argument was heard. Fed. R. Civ. P. 78.

to promote same. (Id.)  In turn, according to Plaintiff, Plaintiff agreed to "arrange for a manufacturer to mass-produce the product line," "provide and service quality control and product warranties," "negotiate pricing with HSN," and "repair and replace defective products," among other things. (Id.).  Plaintiff further alleges that prior to 2003, Defendant's business consisted of a "home-based operation through which she designed and manufactured in her basement shop limited jewelry items for sale at trade shows and small jewelry boutiques." (Id.).  As a result of their new "business arrangement," Plaintiff alleges that the sale of "Heidi Daus" product line grew from an initial purchase order of $185,000 in 2003 to purchase orders totaling over $3,300,000.00 in 2006. (Id. at 5, 6).  In this regard, Plaintiff claims that "[a]s a result of the substantial growth of goodwill and name recognition, the consuming public at large now recognizes the term 'Heidi Daus' and Daus' likeness as symbols identifying the types of products retailed by HSN as part of the 'Heidi Daus' product line." (Id. at 7).

Plaintiff further alleges that it approached Defendant in April 2006, in an attempt to "formalize the terms of the relationship." (Id. at 8).  Defendant refused, however, to sign a written agreement.  Instead, according to Plaintiff, Defendant stated the following:

> Heidi Daus does not sign contracts.  I have been in business for twenty years and have always done business on a handshake; my word is my bond.  As long as I am doing my jewelry collection on TV shopping networks, you are my partners and will exclusively do all of my jewelry manufacturing; you are the managers of my TV business.

(Gesweli Decl., ¶ 14).  However, in May 2007, Plaintiff claims that Defendant breached the terms of their agreement by indicating that she intended to "disassociate" herself from Plaintiff.  "At that time, she told UTC that she planned to manufacture jewelry designs herself and that she would sell the finished product to HSN as part of the 'Heidi Daus' product line." (Pl. Br. at 9).  Subsequent to this discussion, Plaintiff discovered that Defendant had filed for and received federal registration of the "Heidi Daus" mark for use in marketing jewelry and several other product lines. (Id. at 10).

Thus, Plaintiff claims that "[u]pon information and belief, Daus has already pirated UTC's business with HSN and plans to continue to sell the parties' existing and new designs . . . and market those designs using the term 'Heidi Daus' and her likeness, without accounting to UTC. (Id. at 11).  As a result, Plaintiff commenced the instant cause of action on August 31, 2007, asserting claims for breach of fiduciary duty, breach of contract, unjust enrichment, constructive fraud, tortious interference, unfair competition and trademark infringement.[2] Currently before this Court is Plaintiff's application for a preliminary injunction, with interim restraints, which was filed electronically by Plaintiff on October 10, 2007, by way of Order to Show Cause.  In particular, Plaintiff requests that this Court "enter an order with interim restraints temporarily enjoining Defendants from marketing jewelry or other products using the 'Heidi Daus' mark or Daus' likeness and from selling jewelry or other products through

_____

[2] Jurisdiction is premised on 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121.

television-based retailers." (Pl. Br. at 2).

**Standard**

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."   Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir.1993). Nonetheless, a trial court's decision to issue a preliminary injunction is discretionary.  New Eng. Braiding Co., v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed Cir. 1992).  The Third Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied."  Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir.1989).  The court identified those "traditional prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest.  Id. at 812-13.

A plaintiff must establish more than a risk of irreparable injury. He must demonstrate "a clear showing of immediate irreparable injury." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 205 (3d Cir. 1990) (quoting ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 225 (3d Cir. 1987)) (emphasis added).  Finally, the Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent."  Id. at 197 (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir.1982)); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir.1984).  With this framework in mind, the Court will first address the issue of whether Plaintiff has demonstrated the existence of any immediate irreparable harm.

**Legal Discussion**

**A.     Irreparable Harm**

In order to satisfy the element of irreparable harm, Plaintiff must demonstrate that without the issuance of an injunction, it will suffer harm which cannot be sufficiently redressed following a trial of the matter. See, e.g., Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 528 (D.N.J. 1999) (citation omitted).  In this regard, Plaintiff argues that "absent the relief requested herein, UTC faces the loss of the goodwill it established in the creation, expansion, and promotion of the 'Heidi Daus' product line, and stands to lose the entire enterprise itself.  It will lose the right to continue a business in which it has engaged for years and one that it nurtured from virtual obscurity to a multi-million dollar enterprise."

As a preliminary matter, the Court notes that Defendant's alleged breach occurred in May 2007, at which time she indicated that she wished to disassociate herself from Plaintiff and work

3

directly with HSN.  Nevertheless, Plaintiff waited three months before commencing the instant cause of action in August 2007, and five months before filing the instant application for injunctive relief.   Plaintiff fails to provide any explanation, whatsoever, for this delay.  In the Certification submitted by Jim Gesweli, President of UTC, he indicates that he first discovered that Daus had filed for – and received – federal registration of the "Heidi Daus" mark for use in marketing jewelry after the commencement of this lawsuit. (Gesweli Decl., ¶ 20).  Even if the Court were to construe Mr. Gesweli's statement as an explanation for the delay in seeking the instant application for a preliminary injunction, Plaintiff fails to explain why such a discovery triggered the necessity for the extraordinary relief now being requested, particularly since Plaintiff had been on notice that Defendant intended to continue selling the "Heidi Daus" product line directly to HSN since May 2007, if not earlier.  (Id., ¶ 18).  In light of Plaintiff's own course of conduct, the Court finds the existence of any immediate irreparable harm to be lacking.

Even if the Court were inclined to overlook the lack of immediacy in Plaintiff's own actions, Plaintiff fails to substantiate any allegations of currently existing immediate irreparable harm.  To the contrary, Plaintiff merely asserts the risk of potential injury.  For example, in the context of addressing the balancing of hardships prong, Plaintiff argues that "UTC will have no control over the quality of the infringing products and the consuming public will be unaware of the fact that Defendants' product line will be made by different manufacturers and not covered by UTC's product warranty service." (Pl. Br. at 37-38).  The Court recognizes that in the context of trademark infringement cases, "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." Opticians Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 195 (3d Cir. 1990).   While Plaintiff maintains that it previously provided "quality control and product warranties" to the "Heidi Daus" products, Plaintiff admits that it was never responsible for the actual manufacturing of the products at issue.  (Pl. Br. at 4). Instead, it was responsible for "arrang[ing] for a manufacturer to mass-produce the product line." (Id.).  Plaintiff does not specifically allege that it has reason to believe that the products now being sold by Defendant are: (a) in fact being manufactured by a different manufacturer, or (b) are, in any way, different or inferior to the products previously sold by the parties jointly.  While Plaintiff's allegations suggest a risk of irreparable injury, such a risk – alone – will not suffice. See ECRI, 809 F.2d at 225 ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'").

Finally, Plaintiff also rests its assertion of irreparable harm on the allegation that Defendant "will continue to infringe the Marks." (Pl. Br. at 36-37).  In support of this assertions, Plaintiff cites to Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 726 (3d Cir. 2004), for the proposition that "trademark infringement amounts to irreparable harm as a matter of law." (Id.). While Plaintiff may ultimately demonstrate an entitlement to property rights in the "Heidi Daus" trademark, given the undisputed fact that Defendant applied for – and received – federal registration of the "Heidi Daus" trademark, the Court finds the extraordinary relief requested by Plaintiff to be inappropriate at this time.

### Conclusion

For the reasons stated above, the Court denies Plaintiff's application for a preliminary

injunction, with interim restraints.  An appropriate Order accompanies this Opinion.


                                           /s/ Jose L. Linares

                                           United States District Judge